```
        IN THE UNITED STATES DISTRICT COURT
      FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
                   JACKSON DIVISION
```

**REGINA RAY**                                                       **PLAINTIFF**

VS.                                          **CIVIL ACTION NO. 3:04-CV-558BN**

**LEVI STRAUSS & CO.**                                               **DEFENDANT**


## OPINION AND ORDER

This cause is before the Court on the Motion for Summary Judgment of Defendant Levi Strauss & Co., filed August 10, 2005, under docket entry no. 51.[1] Having considered the Motion, Response, Rebuttal and all attachments to each, as well as supporting and opposing authority, the Court finds that the Motion is well taken in part and not well taken in part and should be granted in part and denied in part.

### I.   Factual Background and Procedural History

Plaintiff Regina Ray brings this employment discrimination suit against her former employer, Defendant Levi Strauss & Co. ("Levi"), alleging that she was constructively discharge because of her age. Ray was forty-two years old when her employment with Levi was terminated on August 6, 2003.

---

[1] Defendant incorrectly filed its Motion for Summary Judgment on August 8, 2005 (docket entry no. 45). Defendant was directed by the Clerk of the Court to re-file the document, which it did on August 10, 2005 (docket entry no. 51).

Ray began her employment with Levi in 1981 at its Canton, Mississippi, Customer Service Center ("Canton CSC") as a customer service representative. Over the course of her employment, Ray was promoted four times, receiving her final promotion in 2001 as a Financial Advisor. In July 2002, the supervisor who had promoted Ray to Financial Advisor, Karen McCord, left Levi. McCord was replaced in January 2003 by Stacey Goff who was twenty-nine years old at that time.

Because the finance department in the Canton CSC "had developed somewhat of a bad reputation," Levi alleges that Goff was brought in to make changes and raise expectations among the finance department employees. Almost immediately, Goff took issue with Ray's performance. Goff contends that Ray constantly made clerical errors in her work and missed deadlines in filing reports. Further, Ray allegedly failed to follow Goff's express orders on several occasions. Recognizing these deficiencies, Goff began meeting with Ray to correct the problems she had identified. Goff referred to these meetings as "coaching sessions." See Exhibit "F" to Defendant's Motion for Summary Judgment. Seeing no improvements in Ray's performance, Ray was given a written warning and was placed on a sixty-day performance improvement plan on May 30, 2003. Exhibit "O" to Defendant's Motion to Dismiss.[2]

---

[2] The written warning and improvement plan was signed by neither Ray nor Goff. Ray contends that Goff told her to "disregard" the warning and improvement plan. Exhibit "B" to

Levi alleges that Ray ignored the warning and was unreceptive of Goff's advice on how to improve her performance. Because Ray's performance allegedly went unchanged after the warning, the decision was made by Goff, along with human resource officials and finance department management, to terminate Ray. On August 6, 2003, Ray was forced to resign.

Ray now disputes that she was discharged because of poor job performance. Instead, she contends that her termination was motivated by age discrimination. Ray alleges that she was fired to create an opening for Lee Puckett, who was thirty years old at the time of Ray's termination. Puckett was hired in May 2003 by Levi on a temporary basis as a Financial Analyst. Because a hiring freeze was in effect when Puckett was hired, he could not become a permanent employee until a permanent position in the finance department came open. Ray therefore reasons that she was fired to open-up a permanent position for the younger Puckett. She also alleges that she performed the duties of a Financial Analyst prior to Puckett's employment and that she even trained Puckett. Twelve days after Ray was forced to resign, Puckett was elevated to permanent employee status.

Aggrieved by her termination, Ray filed a Charge of Discrimination with the Equal Employment Opportunity Commission

---

Defendant's Motion for Summary Judgment. Levi however argues that Ray refused to sign the document.

("EEOC"), alleging a violation of the Age Discrimination in Employment Act, 29 U.S.C. §621 et seq. ("ADEA claim"). A Right to Sue Letter was issued by the EEOC on May 7, 2004, and Ray initiated this action against Levi on July 22, 2004, raising only her ADEA claim. On February 14, 2005, Ray amended her complaint to add claims of intentional and/or negligent infliction of emotional distress and conversion.[3] Ray also asks for punitive damages. Levi filed the subject Motion for Summary Judgment on August 10, 2005, and that Motion is now ripe for consideration.

## II. ADEA Claim

**II.A. Summary Judgment Standard – Employment Discrimination Case**

The Court begins by recognizing that a claim of employment discrimination can be proven through direct evidence or circumstantial evidence. However, proving discrimination through direct evidence is difficult in most cases. Crawford v. Formosa Plastics Corp., Louisiana, 234 F.3d 899, 902 (5th Cir. 2000)(citation omitted). Therefore, in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), the United States Supreme Court set forth a standard by which to analyze discrimination claims based on circumstantial evidence. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 142, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000)(citation omitted); Evans v. City

---

[3] The claim of conversion pertains to unused paid vacation days. Ray claims that Levi refused to allow her to use the vacation days, which she lost after her forced resignation.

4

of Houston, 246 F.3d 344, 350 (5th Cir. 2001). This standard is known as the "McDonnell Douglas burden shifting analysis," or simply the "McDonnell Douglas analysis."[4]

The first step in the McDonnell Douglas analysis is proof of a *prima facie* case of discrimination by the plaintiff. The tests for proving a *prima facie* case vary slightly depending on the type of discrimination alleged. However, each of the groups of tests is based on minor variations of the following four factors: (1) the plaintiff must be a member of a group protected by employment discrimination law of some type; (2) the plaintiff must be qualified for the employment position in question; (3) the plaintiff must have suffered an adverse employment action, i.e., the plaintiff was not hired or promoted, or the plaintiff was fired or demoted; and (4) someone outside of the plaintiff's protected class must have filled the employment position in issue. Price v. Fed. Express Corp., 283 F.3d 715, 720 (5th Cir. 2002)(citation omitted). "[E]stablishment of a *prima facie* case creates a rebuttable presumption that the employer unlawfully discriminated against the employee." Patrick v. Ridge, 394 F.3d 311, 315 (5th Cir. 2004)(citation omitted).

If the plaintiff establishes a *prima facie* case of discrimination, then under McDonnell Douglas the burden shifts to

---

[4] The McDonnell Douglas standard is used in both Title VII and ADEA claims. Sandstad v. CB Richard Ellis, Inc., 309 F.3d 893, 896 n. 2 (5th Cir. 2002).

the employer to "articulate a legitimate, nondiscriminatory reason" for the employment decision in issue. Patrick, 394 F.3d at 315 (citation omitted).  This is a burden of *production* as opposed to a burden of *persuasion*, and no credibility assessment can be made at this phase. Reeves, 530 U.S. at 142 (citation omitted).  "As this is a burden of production, the employer need not prove that it was actually motivated by its proffered reason." Patrick, 394 F.3d at 315 (citation omitted).  However, "an employer must articulate a nondiscriminatory reason *with 'sufficient clarity'* to afford the employee a realistic opportunity to show that the reason is pretextual." Id. at 317 (emphasis in original)(citing Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 255-56, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)).  The employer's proffered reason for the employment decision may be subjective in nature, but it must be more than vague and conclusory opinions about the plaintiff. Id.

If the employer meets the burden of articulating a nondiscriminatory reason for its employment decision, then the presumption of discrimination created by plaintiff's *prima facie* case is nullified, and the inquiry becomes more fact specific. Patrick, 394 F.3d at 315 (citation omitted).  At this point, the McDonnell Douglas scheme shifts the burden back to the plaintiff to "show that the employer's putative legitimate, nondiscriminatory reason was not its real reason, but was merely a *pretext for discrimination*." Id. (emphasis added; citation omitted).

The Crawford court provided a guideline by which to measure whether an employer's reason for the employment decision was merely a pretext for discrimination.

> A mere scintilla of evidence of pretext does not create an issue of material fact in all cases. As stated by the Supreme Court in Reeves, a plaintiff must present "*sufficient* evidence to find that the employer's asserted justification is false." It is, therefore, possible for a plaintiff's evidence to permit a tenuous inference of pretext and yet be insufficient to support a reasonable inference of discrimination. Likewise, if the evidence of pretext is substantial, the plaintiff may create a genuine issue of material fact without independent [or direct] evidence that discrimination was the real reason for the adverse employment action. The determination must be made on a case-by-case basis, depending on the nature, extent, and quality of the evidence, as to whether a jury could reasonably infer discrimination.

Crawford, 234 F.3d at 902-03 (emphasis in original; internal citations omitted). If the plaintiff creates a genuine issue of material fact on the pretext issue, then the case must proceed to trial. Conversely, if plaintiff fails in this endeavor, then summary judgment must be granted in defendant's favor.

The ultimate question in any employment discrimination case is of course whether the plaintiff was a victim of intentional discrimination. Reeves, 530 U.S. at 153. Although the burdens of producing evidence shift back and forth under the McDonnell Douglas analysis, the ultimate burden of proving intentional discrimination remains with the plaintiff at all times. Id. at 143 (citation omitted).

**II.B. Analysis – Plaintiff's Prima Facie Case**

Levi concedes that Ray is a member of a protected class and that Ray suffered an adverse employment decision. The only disputed issues regarding Ray's *prima facie* case are (1) whether Ray was qualified to be a Financial Advisor and (2) whether Ray was replaced by someone younger.

As to whether Ray was qualified to be a Financial Advisor, the Court finds that a genuine issue of fact exists. The fact Ray was promoted to the position of Financial Advisor by Levi is enough, in and of itself, to create a genuine issue of fact.

There is also sufficient evidence to create an issue of fact as to whether Ray was replaced by a younger employee. Ray relies on three facts in arguing that she was replaced by the younger Puckett. First, Ray claims that Puckett assumed her job responsibilities as a Financial Advisor. Exhibit "B" to Defendant's Motion for Summary Judgment, p. 36. Second, Ray argues Puckett effectively replaced her when Levi elevated Puckett's employment status from temporary to permanent. Because of the hiring freeze, Ray reasons that Puckett would not have been promoted to permanent employee status but for her termination. Third, Ray relies on the fact that Puckett took over Ray's office space after her termination.

Levi argues that there is no evidence that Puckett took over Ray's duties and that Goff in fact took over Ray's

responsibilities. Defendant's Memorandum in Support of its Motion for Summary Judgment, p. 19 (citing Exhibit "F" to Defendant's Motion for Summary Judgment). However, even if there is no evidence that Puckett took over Ray's duties, Levi does not dispute the fact that Puckett was promoted to permanent status because of the opening in the Finance Department created by Ray's termination. Also, Levi concedes that Puckett moved into Ray's office after Ray was terminated. Thus, the Court finds that there is sufficient cumulative evidence to create a jury question as to whether Puckett replaced Ray. Accordingly, the Court finds that Ray has demonstrated a *prima facie* case of discrimination.

**II.C. Analysis – Defendant's Legitimate, Nondiscriminatory Reason**

Because a presumption of discrimination has been created through the proving of Ray's *prima facie* case, the burden now shifts to Levi to provide a legitimate, nondiscriminatory reason for its decision to terminate Ray. Levi proffers that it terminated Ray due to "performance problems." In support of its asserted reason, Levi offers Goff's deposition testimony wherein Goff recollects numerous instances of mistakes in Ray's work, missed deadlines, communication failures, and a lack of organization. See Exhibit "F" to Defendant's Motion for Summary Judgment, pp 21-23. Additionally, Levi presents ample documentation of Ray's inadequate performance. See Exhibits "F(b)," "G," "J," and "L-Q" of Defendant's Motion for Summary Judgment. The Court therefore finds

that Levi has met its burden of asserting a non-discriminatory explanation for Ray's termination.

**II.D. Analysis – Plaintiff's Proof of Pretext**

The burden must now shift back to Ray to prove that the asserted reason of Levi was in fact a pretext to discrimination. To prove that the proffered motive of Levi is pretextual, Ray must essentially prove that Goff and other management officials did not believe Ray's performance was substandard. Thus, whether Ray's performance was actually deficient is irrelevant to the issue of pretext. As the Fifth Circuit has explained, "even an incorrect belief that an employee's performance is inadequate constitutes a legitimate, non-discriminatory reason" for termination. Little v. Republic Refining Co., 924 F.2d 93, 97 (5th Cir. 1991).

Ray first relies on her past employment record as evidence that Levi had an improper motive for termination. She argues that "there is no reason why Mrs. Ray would just start being insubordinate and not performing her job duties well after over twenty-two (22) years of good performance." Plaintiff's Memorandum in Response to Defendant's Motion for Summary Judgment, p. 11 (emphasis omitted). However, the fact Ray went twenty-two years without any "serious complaints" is irrelevant as to whether Goff and the current management of Levi believed that Ray performed inadequately. In fact, Ray never contends that Goff's observations regarding her poor performance were incorrect. She also does not

dispute that she often made clerical errors, missed deadlines, or that she was not organized. Although Ray asserts that her meetings with Goff were not "coaching sessions," Ray does not dispute that Goff did in fact bring these performance issues to Ray's attention. Moreover, several of the specific performance deficiencies Levi points to, such as lack of communication and organization, are subjective determinations. Just because Ray's past supervisor did not consider Ray deficient in these areas does not mean that Goff did not have a good faith, subjective belief that Ray's performance was unsatisfactory.

As further proof of pretext, Ray points to statements made by Levi in its Memorandum in Support of its Motion for Summary Judgment wherein Levi states that Ray was a "dedicated and loyal employee." Levi however never contends that Ray was not dedicated or that she was not loyal to the company. Instead, Levi urges that Ray's _performance_ was the problem. An employee can certainly be dedicated and loyal to their employer, but at the same time perform poorly.

Further, Ray offers an email written by her former supervisor, Karen McCord, soon after Ray was terminated. In that email, McCord expressed her sympathy to Ray after Ray lost her job. McCord also offered to be a reference for Ray in the future. Exhibit "H" to Plaintiff's Response to Defendant's Motion for Summary Judgment. The email however does not speak to Ray's performance and it in no

11

way tends to show that the asserted justification of poor performance is not the real reason Ray was terminated.

Ray also alludes to a "young buck" comment that was allegedly made by the Vice President of Logistics for Levi, Richard Kuether. A comment such as this can only be used as evidence of discrimination if "the speaker is principally responsible for the plaintiff's firing." Sandstad v. CB Richard Ellis, Inc., 309 F.3d 893, 899 (5th Cir. 2002). Even assuming this comment infers age-based animus, there is no proof that Kuether was responsible in anyway for Ray's termination.

Finally, Ray claims that there is a pattern or practice of age discrimination attributable to Levi. To prove a pattern or practice of discrimination, Plaintiff must provide evidence that "the impermissible discrimination was the company's standard operating procedure – the regular rather than the unusual practice." Wyvill v. United Companies Life Ins. Co., 212 F.3d 296, 302 (5th Cir. 2000). As evidence of pattern or practice, Ray cites two other ongoing age discrimination lawsuits filed in this court – Ray Hilderbrand v. Levi Strauss & Co., Cause No. 3:04CV178BN and Craig Weinrich v. Levi Strauss & Co., Cause No. 3:04CV725WS – wherein former employees of Levi allege a pattern and practice of discrimination. Ray also relies on her own belief that Levi has a pattern or practice of discrimination. Exhibit "D" to Plaintiff's Response to Defendant's Motion for Summary Judgment.

The fact that other employees of Levi have filed age discrimination suits against the employer is clearly not evidence of a pattern or practice of discrimination by the company. Moreover, the two former employees of Levi who are parties to those suits are not similarly situated to Ray. See Wyvill, 212 F.3d at 302. But even if their employment situations were similar, Ray has presented no admissible evidence regarding the other employees' personal knowledge of a pattern or practice of discrimination. Similarly, Ray's own unsupported, conclusory assertions of a pattern or practice of discrimination are insufficient to create a genuine issue of fact. See Forsyth v. Barr, 19 F.3d 1527, 1533 (5th Cir. 1994) ("unsubstantiated assertions are not competent summary judgment evidence").

Accordingly, the Court finds that Ray has failed to prove that a reasonable factfinder could conclude that Defendant's asserted explanation of poor performance is not the real reason for Ray's termination. Ray's ADEA claim therefore must fail as a matter of law.

### III. Remaining Claims

In addition to her ADEA claim, Ray also asserts common law claims of intentional and/or negligent infliction of emotional distress and conversion as well as a claim for punitive damages. See Amended Complaint, filed February 14, 2005, under docket entry no. 25. Although it asks that the entire case be dismissed, Levi

13

fails to address these additional claims in its Motion. Therefore, Ray's intentional and/or negligent infliction of emotional distress, conversion, and punitive damage claims must proceed to trial.

### III.  Conclusion

Based on the holdings presented above:

IT IS THEREFORE ORDERED that Defendant's Motion for Summary Judgment [docket entry no. 51] is well taken in part and denied in part and is hereby granted in part and denied in part. The Motion is granted in that the claim raised under the Age Discrimination in Employment Act, 29 U.S.C. §621 et seq., is hereby dismissed with prejudice. The Motion is denied as to all other claims asserted in the Complaint.

IT IS FURTHER ORDERED that the Clerk of the Court should term docket entry no. 45.

SO ORDERED this the 31st day of January, 2006.

s/ William H. Barbour, Jr.
UNITED STATES DISTRICT JUDGE

blj